FOWLER & *al. versus* KENNEBEC AND PORTLAND RAIL ROAD COMPANY.

The plaintiffs had contracted to build for the defendants certain sections of their rail road, at agreed prices. While the work was progressing, the defendants, with a view to some change in their location, desired a suspension of the work. Thereupon the contract was modified by the parties. For an agreed compensation, the work was to cease, till the further order of the defendants, and if the work should not be resumed within two years, the defendants were to pay the plaintiffs $750; if resumed within that time, the former contract was to apply to a residue part only of the said road sections;

Fowler *v.* Kennebec and Portland Rail Road Co.

and upon such resumption, the plaintiffs were, upon notice, to proceed with the work upon said residue sections, in the manner and at rates of price originally agreed. In the modified contract, a quantity of stones for the road, which the plaintiffs had procured, were purchased by the defendants, upon a stipulation that, if such resumption should take place, the stones should be re-purchased by the plaintiffs.

The location of the road having been altered, as to some of its sections, the defendants, within the two years, recommenced operating upon some of its unchanged parts. They gave no notice to the plaintiffs of their intention, but employed another company to do the work. *Held,* that, as the work was resumed within the two years, the plaintiffs were not entitled to recover the $750. *Held,* that the plaintiffs were entitled to do the work, when resumed, and to recover damages for not being called upon and employed to do it.

COVENANT BROKEN.

The facts are sufficiently stated in the opinion of the court. The case was submitted for nonsuit or default.

*Shepley* and *Dana,* for the plaintiffs, urged the following positions.

1. Where one party to an executory contract puts an end to it by refusing to fulfil, the other party *is* entitled to an equivalent in damages for the gains he would have realized from the performance. *Masterton* v. *Mayor, &c. of Brooklyn,* 7 Hill, 61.

2. By the resumption of the work, the original contract, which had been merely suspended, was revived.

3. By necessary construction, the defendants were bound to that contract.

*R. Williams,* for the defendants.

The contract was not mutual and was not intended to be. It left, and was intended to leave, the election with the defendants whether again to employ the plaintiffs.

The road, after the plaintiffs retired from the work, was located upon a different bed. The plaintiffs were not bound to build it there. It was 'therefore necessary to employ others to do it.

Upon the road, as contemplated in the contract, there has been no resumption of the work by the defendants.

The plaintiffs therefore are entitled to the $750, as stipulated, though not in this action.

TENNEY, J. — On Nov. 29, 1847, the plaintiffs, with one Cassidy, entered into a contract with the defendants to do certain work upon sections No. 1 to 11 inclusive, of their rail road, in a specified manner and within a given time. The defendants in the same instrument contracted with the plaintiffs to pay the consideration agreed upon, for their services. The work was commenced and continued to be prosecuted by the plaintiffs according to the agreement, till the defendants having determined to suspend all further work upon the part of the road embraced in the contract, entered into a further agreement on April 29, 1848 ; by which the original contract was to be suspended for the present ; and that the work agreed therein to be done was to cease until the further order of the company ; upon the resumption of the work at any time within two years from the date of the last agreement, by the defendants, the former contract was to apply only to sections No. 1 to No. 11, inclusive ; Cassidy ceased to be a party ; but the former contract was to remain in force against the other parties thereto, as it regarded sections Nos. 3 to 11 inclusive ; and if the construction of said road from North Yarmouth to Portland was not resumed by the defendants within two years, they were to pay the plaintiffs the sum of $750, in addition to the sums which had been paid at the time of the execution of the latter contract. In consideration of the before mentioned agreement to modify the original contract, and the sum of $1000, paid to Cassidy, and of $2250, paid to the plaintiff, and the full payment of the amount of the stipulated price for their work, which had been done, the plaintiffs covenanted and agreed with the defendants, that upon the request of the latter at any time within two years, they would resume the work, upon the several sections to be done according to the latter agreement, and would do and perform all the covenants and agreements in the contract of Nov. 29, 1847, which they and Cassidy had therein contracted to do upon the several sections, from No. 3 to No. 11 inclusive, upon the same terms and conditions, for the same prices and terms of payment, and in the same manner

in every particular, as is provided for, in said contract, to be fully completed within two years from the time of such resumption. And it was further agreed between the parties, that the plaintiffs should purchase a quantity of stone, lying upon the line of the road, sold by them to the defendants, at the time of the suspension of the work, if the work should be resumed within two years, in the manner provided in the contract of April 29, 1848, and to allow the defendants the amount, which they paid therefor, in part payment of the work.

In Sept. 1849, and within two years from the date of second contract, the company resumed operations on a part of that portion of the road embraced in the modified agreement, and contracted with Nash and others to do the work thereon ; and gave the plaintiffs no opportunity of performing the work, which they had contracted to do, although they were ready and willing to execute the agreement on their part.

The defendants contend, that by the contract of April 29, 1848, they were at liberty to employ others and not the plaintiffs to do the work, after they had resumed it, without incurring any liability therefor.

The intention of the parties must be ascertained from their contract, including the original agreement, and the subsequent modification. It is believed that their language and spirit are clear, and free from any ambiguity. The validity of the original contract is fully recognized in that made afterwards, excepting so far as it is changed by the latter. The parties do not undertake to cancel it, or to substitute therefor, entirely another. The agreement last made is expressly termed a modification of the one first made, which is referred to therein, as containing the several obligations of each party. Such being the character of the contract of April 29, 1848, that of Nov. 29, 1847, would be binding upon the parties, so far as their duties remained unchanged by the modification.

But the design of the parties is apparent from language which is still more direct and positive. Cassidy, for a con-

sideration mentioned was released from the contract, in which he had been interested as a party; "but the same shall remain in force against the other parties thereto, as regards sections three to eleven inclusive." The contracting parties to the original agreement are obviously the parties here referred to excepting Cassidy, and the term cannot be limited so as to apply to the individuals only, who composed one of the parties to the contract, unless from other parts of the instrument, such was manifestly the intention. Upon an examination of the whole contract, the restrictive construction contended for by the defendants cannot be admitted. It would not only pervert the plain meaning of the language quoted, but would not comport with the general purpose, evidently entertained by both parties.

Upon the resumption of the work, as provided in the contract, of April 29, 1848, the plaintiffs were bound to take the stone and allow their value in part payment of the work to be done, after the renewal of the labor. It was for the company to determine, whether the work should be recommenced within two years or not; and if it was the resumption by the defendants, which was to impose this duty upon the plaintiffs, without any obligation of the other party to employ them by making the request, to do the work, this provision in the agreement was absurd, and under the circumstances disclosed in the contract and the case, hostile to the interest of both parties.

The contract last entered into assumes that the omission of the company to resume the work within the period of two years, would occasion a loss to the plaintiffs of $750, which loss would be avoided by an opportunity of doing the work. It is not easy to understand, that the plaintiffs could be induced to surrender without consideration, all claim under the first contract, to the privilege of finishing the work, if the defendants should resume it within two years, and should employ others to their exclusion, and should at the same time exact the sum agreed upon, in the event, that the suspension should continue. It is remarkable that the discontinuance

of the farther construction of the road, which the company might feel compelled to prolong for the period of two years, should require them to make the payment of this sum, when upon a resumption, they might employ others instead of the plaintiffs, who were bound to do the work if requested, they were under no liability to compensate the plaintiffs for the loss of the benefit which was expected to accrue to them from a fulfilment of the agreement. It cannot be believed that such results were contemplated.

The defendants rely upon the language of the contract, that upon *the request* of the company at any time within two years, the plaintiffs were to resume the work, &c., insisting that it was only upon such request, which the defendants were at liberty to make or withhold, the plaintiffs were entitled to any of the advantages, which they might otherwise expect under their agreement.

It was for the company alone to elect, whether they would proceed with the construction of the road within two years; and if so, at what time. They had the right to call upon the plaintiffs to re-enter upon the work at any time during that period. The plaintiffs had no right to move therein without notice from the other party after the suspension. Before their liability would be revived, they were entitled to know the design of the company touching their future labors under the contract. This condition was for the purpose of giving the information to the plaintiffs, that the work was to be recommenced, and of creating a liability in them to perform it; they could be under none without a request from the company to that effect. This request was not intended as a step to be taken by the defendants, necessary to give the plaintiffs *a right* to perform what they had contracted to do, and to receive upon the performance, the benefits anticipated, but to perfect their *obligation* under the contract. This right of the plaintiffs' was fully secured to them in other parts of the agreement, and cannot be taken away by another clause, which admits of a construction, which renders the whole

harmonious, and according with the manifest intention, designed to be carried into effect.

It is again contended by the defendants, that they not having resumed the construction of the road in all its parts, as it was described in the contract after its modification, the plaintiffs, were not entitled to perform the work.

In one part of the contract of April 29, 1848, it is agreed, " that in the event the construction of said road from North Yarmouth to Portland be not resumed," by the defendants within two years, they will pay the plaintiffs the sum of $750, &c. In another part of the instrument, the language is, " that in the event, the said work shall not be resumed within the period of two years, the defendants will pay, &c. From this there can be no doubt, that the parties intended, when the company recommenced operations upon the road, the privileges and obligations of each party under the contract and its modification would be revived, and would be the same as if the suspension had not taken place. The road which the plaintiffs were to do the work upon, was so described in the instruments, that it is not suggested, that it could be misunderstood or its identity be matter of dispute. The work which the plaintiffs were to do was specified with sufficient precision ; and when done the company was bound to pay the consideration according to the agreement. It was not in their power by any change in the location or mode of construction of the road, without the consent of the plaintiffs, to take from them the benefit of their contract, unless that right was secured to them. The written agreement contains no such provision; but on the contrary material changes were provided for, and the force of the contract was not to be thereby annulled or essentially impaired.

It is not to be supposed, that the defendants in resuming the construction of the road, would do so by simultaneous acts upon every minute portion of it. If the work was renewed upon a part of the road referred to in the agreement, it cannot with propriety be denied, that " the construction of said road" or that " said work was resumed," without some explanation,

to be found in the contract, that the language was used in a different sense, from its generally received meaning. No such explanation is found. And when the company are admitted to have resumed operations on a part of that portion of the road, embraced in the modified agreement of April 29, 1848, and to have contracted with Nash and others to do work thereon, it cannot be doubted, that it was such a resumption, as would come within the meaning of the contract. Whether there were any changes, which were so great that the road to be made by the plaintiffs, and that on which the company resumed their operations were not identical, the case is silent. We cannot assume that it was so. The decision must be upon the facts agreed, and which are before us. It does not appear from them, that any change took place after the modification. It is manifest from the case, that the construction of the road was resumed by the defendants within two years from the date of the contract of April 29, 1848.

The resumption having taken place by the company within the period of two years, they are not liable for the sum agreed upon by the parties as an equivalent for the loss, which was expected to result to the plaintiffs from an omission to resume the work within two years. But having broken their covenant they are liable for the loss, which has accrued to the plaintiffs in consequence thereof. These damages are to be determined in the manner provided for in the agreed statement of facts.

According to the agreement of the parties,

*Defendants defaulted.*